IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PAVEL NAUMOV,<br><br>       Plaintiff,<br><br>     v.<br><br>CHAIRMAN OF THE BOARD OF<br>TRUSTEES, McDANIEL COLLEGE, *et al*.<br><br>       Defendants. | Civil Case No. 8:15-cv-00482-GJH |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, President Roger Casey ("Casey"), Provost Jeanine Stewart ("Stewart"), and the unnamed individual, Chairman of the Board of Trustees, McDaniel College, Inc. ("the Chairman"), (collectively "Defendants"), by and through their undersigned counsel, hereby submit this Memorandum in support of their motion seeking dismissal of the Complaint filed by Plaintiff Pavel Naumov ("Plaintiff" or "Naumov").

### INTRODUCTION

Naumov was formerly employed by McDaniel College, Inc. ("McDaniel") as an Associate Professor of Computer Science. (Complaint ¶ 4). McDaniel College is an institution of higher education located in Westminster, Maryland. (*Id.*) Naumov's Complaint asserts various causes of action relating to the termination of his employment by McDaniel. The Complaint, however, does not name McDaniel as a Defendant, but instead asserts claims against two named individuals who hold a position at McDaniel; Casey, McDaniel's President, and Stewart, McDaniel's Provost and Dean of the Faculty. (Complaint ¶¶ 5-6). Naumov also has

1

named the "Chairman of the Board of Trustees, McDaniel College, Inc.," as a Defendant, but does not identify such individual by name.

Naumov's Complaint must be dismissed for insufficient service of process, as Naumov, through counsel, failed to properly serve *any* of the Defendants. Naumov's only attempt to serve Defendants was to send a copy of the complaint, along with two copies of a summons issued to Stewart via certified mail to Albert J. Mezzanotte, Jr., Whiteford, Taylor & Preston, LLP.[1] (Complaint, *caption*); (ECF 3). Because this was insufficient service of process on all three Defendants, the Complaint must be dismissed in its entirety pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.

Naumov's Complaint must be dismissed for the additional reason that it fails to state any valid claim for relief against the Defendants.[2] The first count of the Complaint, characterized "Violation of Title IX Contract," must be dismissed, as Title IX does not provide relief for claims brought against individuals. Moreover, to the extent Naumov's claim is based on an alleged contract between McDaniel and Naumov, none of the Defendants are alleged to have breached, or even been a party to, the alleged contract at issue. Naumov's second count, for intentional infliction of emotional distress, fails to include any allegations as to emotional distress experienced by Naumov, and, further does not allege any conduct by the Defendants that could be construed as "extreme and outrageous" as that element of the tort has been defined by Maryland's Court of Appeals. The Complaint's third count, for wrongful discharge in violation of public policy is premised on McDaniel's alleged violation of Title IX. However, because

---

[1] Mr. Mezzanotte is the registered agent for McDaniel College, Inc. However, McDaniel College, Inc. was not named as a Defendant in Naumov's Complaint.
[2] Paragraph One of the Complaint states, "[j]urisdiction is proper in Maryland Courts under the Maryland Human Rights Act, State Gov't, Ann. §20-1001, et seq." (Complaint ¶1). While Defendants do not dispute that this Court has jurisdiction over Plaintiff's claims, Plaintiff has not asserted a claim under the Maryland Human Rights Act, Md. State Government Code Ann. § 20-1001.

Title IX is a statute which provides an independent remedy for an alleged violation, it cannot form the basis of a claim for wrongful discharge in violation of public policy. Furthermore, none of the Defendants is alleged to have employed Naumov and, therefore, cannot be held liable, as a matter of law, on a theory of wrongful discharge. Naumov's final claim is for violation of due process in violation of the United States Constitution. The Complaint, however, contains no allegation that any of the Defendants is a state actor subject to the due process requirements of the Fourteenth Amendment. Accordingly, that claim must be dismissed.

### STATEMENT OF FACTS PLED IN COMPLAINT

**A.     The Parties.**

Naumov was employed as an Associate Professor of Computer Science at McDaniel. (Complaint ¶ 4). Naumov was hired by McDaniel in 2005. (*Id.*) Naumov's Complaint names as Defendants three individuals, (1) the Chairman of the Board of Trustees, McDaniel College, Inc., (2) President Roger Casey, and (3) Provost and Dean of the Faculty Jeanine Stewart. (Complaint, *caption*, ¶¶5-6).

**B.     Naumov's Termination.**

Naumov was suspended from his position in August 2014 following "complaints against him for stalking." (Complaint ¶ 11). Stewart subsequently initiated a proceeding against Naumov under McDaniel's Title IX policy. (Complaint ¶ 13). Naumov asserts in his Complaint that the resulting investigation did not comply with certain terms of the Title IX policy and the McDaniel faculty handbook. Naumov's employment ultimately was terminated following the Title IX proceeding. (Complaint ¶ 96).

C.  **Claims Asserted by Naumov.**

In Count One of the Complaint, styled as "Violation of the Title IX Contract," Naumov asserts that "[t]he Title IX policy of McDaniel College constitutes a contract between the college and faculty members as well as students and staff members." (*Id.* ¶ 75). He further alleges that "[t]here was a deliberate violation of the procedures set forth in the Title IX policy by McDaniel College." (*Id.* ¶ 76).

In Count Two, Naumov alleges that the conduct of Casey and Stewart in initiating and maintaining the Title IX proceeding that led to his termination caused him emotional distress. By that count, he seeks to state a claim under the common law tort of intentional infliction of emotional distress.

In Count Three, styled as "Wrongful Discharge," Naumov asserts that McDaniel's termination of his employment was in violation of the public policy embodied in Title IX on the grounds that the proceeding resulting in his termination allegedly was not performed in compliance with McDaniel's Title IX policy.

In Count Four, styled as "Violation of Due Process," Naumov asserts McDaniel's alleged defects in the proceeding that led to his termination amounted to a violation of "Naumov's right to Due Process under the 14th Amendment to the U.S. Constitution." (*Id.* ¶ 113).

## LEGAL STANDARDS

A.  **Motion to Dismiss Under Rule 12(b)(5) of the Federal Rules of Civil Procedure.**

Once a defendant moves to dismiss for insufficient service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F.Supp.2d 474, 476 (D. Md.

4

2006).  While Courts may "may construe Rule 4 liberally" when "service of process gives the defendant actual notice of the pending action," "the plain requirements for the means of effecting service of process may not be ignored." *Id.* citing *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983).  "If the plaintiff has failed to comply with Rule 4, the court may dismiss the complaint or quash the service, thereby permitting the plaintiff to attempt to properly serve the defendant." *Id*.

Rule 4 of the Federal Rules of Civil Procedure provides that service can be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Because this action was removed to this Court from the Circuit Court for Montgomery County, Maryland law governs whether service was proper prior to removal.  *See Allen v. Shinseki*, 2012 U.S. Dist. LEXIS 173946, 11-12 (D. Md. Dec. 6, 2012) ("In cases removed to federal court, state law determines whether service of process was properly effected prior to removal.")

Maryland law provides, "Service of process may be made within this State . . . (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: Restricted Delivery show to whom, date, address of delivery. *Johnson v. Balt. City Police Dep't,* 2013 U.S. Dist. LEXIS 13780, 11-12 (D. Md. Jan. 28, 2013) citing Md. Rule 2-121(a).

**B.     Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure.**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff is obligated to "provide the grounds of his entitlement to relief," including "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Jackson v. State of Maryland*, Civil No. JFM-10-463, 2010 U.S. Dist. LEXIS 64937, at *2 (D. Md. June 30, 2010).  A complaint may withstand a motion to dismiss only if it contains plausible factual allegations that demonstrate something more than the "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a court evaluating a defendant's motion to dismiss must assume that all facts in the complaint are true, the court need not accept unsupported legal allegations.  *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Further, a Court need not accept legal conclusions couched as factual allegations.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Conclusory assertions are simply insufficient to surpass the requirements of Rule 12(b)(6).  *See Giarratano*, 521 F.3d at 304.

To pass muster under Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief *above the speculative level*…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (emphasis added).  "[T]he pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*

**ARGUMENT**

I.   **Plaintiff's Service Of Process On All Defendants Was Insufficient And The Complaint Should Be Dismissed In Its Entirety Pursuant to Rule 12(b)(5).**

Naumov's attempt to serve Defendants was entirely insufficient. The Maryland Rules of Civil Procedure contain detailed provisions governing the service of process for individuals, which Naumov did not follow.

Under Md. Rule 2-121(a), service of process may be made on an individual in the following three ways (1) "by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it"; (2) "leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion"; or (3) "by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: Restricted Delivery show to whom, date, address of delivery."   Naumov did not use any of these methods.

Naumov attempted to serve all three Defendants by sending a copy of the Complaint by certified mail, accompanied by two copies the same summons issued to Stewart, to the resident agent for McDaniel, Albert J. Mezzanotte, Jr., Esq., Whiteford, Taylor & Preston, LLP, 7 Saint Paul Street, Baltimore, Maryland 21202 ("Mezzanotte").   (Complaint, *caption*); (ECF 3). Mezzanotte is the resident agent for McDaniel, which is not a party to this action.

The fact that Defendants are employed by McDaniel does not mean that service on McDaniel, or its resident agent, is sufficient service on them personally. Further, Plaintiff has not alleged that Mezzanotte is authorized to accept service on behalf of any of the Defendants. When serving an individual defendant, serving "a person unauthorized to accept service, at the defendant's place of employment, is not effective." *Little v. Estes*, 2013 U.S. Dist. LEXIS 158053, 4-6 (D. Md. Nov. 5, 2013). *See also Tann v. Fisher*, 276 F.R.D. 190 (D. Md. 2011).

Service on Defendants Casey and the Chairman was insufficient for the additional reason that no summons was issued or served on Casey or the Chairman. The only summons issued was to Defendant Stewart, which was subsequently sent, along with the Complaint, to Mezzanotte. This is an utter failure to comply with Md. Rule 2-121(a) and Rule 4 of the Federal Rules of Civil Procedure.

For all of these reasons, Naumov's attempt to serve any of the three Defendants was insufficient and his Complaint against Defendants must be dismissed.

## II.  Count I of the Complaint Must Be Dismissed.

### A.  The Complaint Fails to State a Cause of Action For Violation of Title IX.

Count One of the Complaint asserts a claim for violation of Title IX, characterized as "violation of the Title IX Contract." (Complaint ¶¶ 74-84).

It is well-settled that Title IX does not provide for individual liability. "Title IX reaches institutions and programs that receive federal funds, which may include nonpublic institutions, but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Steverson v. Dantone*, 2014 U.S. Dist. LEXIS 79238 (D. Md. June 9, 2014) *quoting Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 247, 129 S. Ct. 788 (2009). Plaintiffs have "no right to relief based on personal liability under Title IX," and any complaint brought against individual defendants on a violation of Title IX must be dismissed. *Steverson v. Dantone*, 2014 U.S. Dist. LEXIS 79238 (D. Md. June 9, 2014); *Pavlovic v. Univ. of Md. Balt. County*, 2013 U.S. Dist. LEXIS 125802 (D. Md. Sept. 3, 2013) ("Title IX has been interpreted as not authorizing suit against school officials and other individuals."); *Fordyce v. Prince George's County Md.*, 2014 U.S. Dist. LEXIS 117967, 15-16 (D. Md. Aug. 25, 2014) ("Plaintiff cannot

8

recover under Title IX as she has not provided any evidence whatsoever that Defendant is a federally funded educational institution").

Defendants Casey, Stewart, and The Chairman are all individuals. The Complaint does not allege that they are "institutions" or "programs" that are properly subject to liability under Title IX. Accordingly, Count One must be dismissed against all Defendants.

### B.  The Complaint Fails to State a Cause of Action For Breach of Contract.

To the extent Count One of the Complaint asserts a claim for breach of contract against Defendants, it must be dismissed. The Complaint makes explicit that McDaniel is the entity alleged to have committed the breach:

> 75. The Title IX policy of McDaniel College constitutes a **contract between the college and faculty members** as well as students and staff members.
> 76. There was a deliberate violation of the procedures set forth in the Title IX policy **by McDaniel College**.

(Complaint ¶¶ 75-76) (emphasis added).

McDaniel, however, is not named as a defendant in this litigation.[3] The Complaint contains no allegation that any of the Defendants breached (or even had) a contract with Naumov. Given the absence of any alleged breach by the Defendants, the breach of contract claim must be dismissed. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."). Accordingly, the claims against all Defendants in Count One must be dismissed.

---

[3] Defendants do not intend to suggest that Naumov's allegations would state a valid claim against McDaniel, but note only that no contract is alleged to exist between the Defendants and Naumov.

9

## II. The Complaint Fails to State a Cause of Action for Intentional Infliction of Emotional Distress.

The elements of a claim for intentional infliction of emotional distress (hereinafter referred to as "IIED") were first set forth by the Maryland Court of Appeals in *Harris v. Jones*, 281 Md. 560, 380 A.2d 611 (1977):

> (1) The conduct must be intentional or reckless;
> (2) The conduct must be extreme and outrageous;
> (3) There must be a causal connection between the wrongful conduct and the emotional distress;
> (4) The emotional distress must be severe.

*Id.* at 566, 380 A.2d at 614.

The Court of Appeals has explained that "'[i]t is for the court to determine, in the first instance, whether the defendant's conduct [in an intentional infliction of emotional distress case] may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.'" *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby*, 326 Md. 663, 680, 607 A.2d 8, 16 (1992) (quoting Restatement (Second) of Torts § 46 cmt. h (1981)). Likewise, "'[i]t is for the court to determine whether on the evidence severe emotional distress can be found; . . . .'" *Harris*, 281 Md. at 571, 380 A.2d at 617 (quoting Restatement (Second) of Torts § 46 cmt. j (1981)).

Here, Naumov's Complaint fails to plead facts supporting either the second and fourth element of the tort. The Complaint contains no allegations whatsoever concerning the severity or the effects of the emotional distress experienced by Naumov. Further, the conduct alleged by Naumov is not "extreme and outrageous" as that term has been defined by Maryland courts in construing the IIED tort.

10

### A. Naumov Has Failed to Allege that He Experienced Emotional Distress Which Was So Severe in Nature as to Support an IIED Claim.

Naumov's Complaint fails to state an IIED claim in that it lacks any factual allegations concerning the the fourth element of the tort, which requires that the emotional distress he experienced be "severe." *Harris*, 281 Md. 566, 380 A.2d at 614. The sole reference in the Complaint to the distress experienced by Naumov consists of a boilerplate statement that "[t]he conduct has caused severe emotional distress because Naumov's career as a professor is in jeopardy." (Complaint ¶ 97).

That conclusory statement falls woefully short of the "severe" emotional distress required by Maryland courts to support an IIED claim. As noted in *Harris*, "[t]hat element of the tort requires the plaintiff to show that he suffered a **severely** disabling emotional response to the defendant's conduct. The severity of the emotional distress not only is relevant to the amount of recovery, but is a necessary element to any recovery." 281 Md. 570, 380 A.2d at 616 (emphasis in original).

Maryland courts routinely have held that allegations of emotional distress which went well beyond those set forth by Naumov are insufficient to support relief under the IIED tort. By example, in *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 758 A.2d 95 (2000), the plaintiff alleged in support of her IIED claim that the defendant's conduct caused her to "seek medical treatment," "constantly to be alert," and that she had to transfer to another worksite due to her emotional trauma. *Id.* at 367-68, 758 A.2d at 114. The Court of Appeals held that those allegations "fail[ed] to allege a 'severely disabling emotional response'" sufficient to survive a motion to dismiss. *Id*. at 370, 758 A.2d at 115 (quoting *Harris*, 281 A.2d at 570, 380 A.2d at 616). *See also Caldor, Inc. v. Bowden*, 330 Md. 632, 642-45, 625 A.2d 959, 63-65 (1993) (fact that plaintiff saw a psychiatrist on one occasion, felt insecure and incapable of trusting others,

and suffered weight loss were held insufficient to constitute "severe" emotional distress); *Harris*, 281 Md. at 572-73, 380 A.2d at 617 (evidence that plaintiff felt humiliated and that conduct worsened plaintiff's speech impediment held insufficient); *Moniodis v. Cook*, 64 Md. App. 1, 15-16, 494 A.2d 212, 219 (1985) (plaintiffs' testimony that they were upset, increased smoking, lost sleep, and experienced hives failed to present legally sufficient evidence to establish severe emotional distress); *Leese v. Baltimore County*, 64 Md. App. 442, 472, 497 A.2d 159, 174 (1985), *overruled on other grounds by Harford County v. Town of Bel Air*, 348 Md. 363, 704 A.2d 421 (1998) (affirming dismissal for failure to state a claim when terminated employee's complaint alleged that he suffered physical pain, emotional suffering and great mental anguish because these allegations fell "short of the 'evidentiary particulars' that must be pleaded to show a *prima facie* case of severe injury") (quoting *Harris*, 281 Md. at 572, 380 A.2d at 617).

Naumov simply has failed to plead any facts whatsoever concerning the distress which he allegedly experienced due to the Defendants' conduct. Of particular significance, Naumov makes no allegation that he sought out any medical attention as a result of his distress. On multiple occasions, Maryland's Court of Appeals has held that even emotional distress which required professional treatment was not sufficiently severe to support relief under the tort. *See Manikhi*; *Caldor*; *Harris*.

Naumov has failed to satisfy the fourth element of the IIED tort as a result of the complete absence of any allegations concerning his emotional distress, particularly in light of the directive that each of the elements of an IIED claim "must be pled and proved with specificity." *Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175, 552 A.2d 947, 959 (1989). Therefore, Count Two of the Complaint must be dismissed.

**B.     The Conduct Alleged by Naumov Is Not Extreme and Outrageous in Nature, and Cannot Support Relief Under the IIED Tort**.

Count Two also fails on the independent ground that the conduct underlying the IIED claim fails to meet the high bar set by Maryland courts in defining those acts which are sufficiently "extreme and outrageous" to support relief under the tort.

The substance of Naumov's allegations is that Stewart lacked the authority to initiate the proceeding under McDaniel's Title IX policy that led to his termination, and that Casey and Stewart engaged in "reckless and intentional" actions in failing to act in accordance with the Title IX policy. (Complaint ¶¶ 88-93).

Maryland's Court of Appeals has characterized the IIED tort as one that is to be used "sparingly." *Weathersby*, 326 Md. at 670, 607 A.2d at 11; *see also Batson v. Shiflett*, 325 Md. 684, 734, 602 A.2d 1191, 1216 (1992). Indeed, the Court of Appeals never has deemed an IIED claim viable in circumstances even remotely similar to those described in the Complaint:

> In the 30 years since the Court of Appeals recognized the tort of IIED, it has upheld such claims only four times. *See Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (1993) (reversing dismissal when HIV-positive surgeon operated on the appellants without their knowledge of his disease); *Figueiredo-Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (1991) (reversing dismissal when plaintiff alleged psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple); *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988) (cause of action for IIED could exist when physician had sex with nurse without informing her he had herpes and infected her with the disease); *Young v. Hartford Accident & Indem. Co.*, 303 Md. 182, 492 A.2d 1270 (1985) (reversing dismissal when workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the "sole purpose" of harassing her and forcing her to drop her claim or commit suicide).

*Lasater v. Guttmann*, 194 Md. App. 431, 449-50, 5 A.3d 79, 90 (2010).

13

Naumov in essence seeks to elevate an adverse employment action to extreme and outrageous conduct supporting relief under the IIED tort. Maryland's Court of Appeals has held expressly that such circumstances cannot support relief under this cause of action. In *Weathersby*, the Court was confronted with an IIED claim in which the plaintiff had been subject to ongoing harassment by a supervisor after reporting the supervisor's romantic relationship with a subordinate. 326 Md. at 667, 607 A.2d at 9-10. The plaintiff was later publicly suspended by the harasser, demoted, and forced to submit to a polygraph examination in connection with a theft in which she had no involvement. *Id.* at 667-68, 607 A.2d at 10. The Court found that these facts did not constitute extreme and outrageous conduct capable of supporting relief under the tort. In so holding, the Court noted that:

> The workplace is not always a tranquil world where civility reigns. Personality conflicts and angst over disciplinary actions can be expected. Even a certain amount of arbitrary nastiness may be encountered at all levels in all occupations; this is a fact of life we must accept as readily as we recognize that employers and employees on the job interact differently than do friends at a summer picnic. If anxiety from management decisions were "deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of severe emotional distress."

*Id.* at 679, 607 A.2d at 16 (quoting *Heying v. Simonaitis*, 126 Ill. App. 3d 157, 81 Ill. Dec. 335, 342, 466 N.E.2d 1137, 1144 (1984)).

As was the case in *Weathersby*, Naumov has failed to identify any conduct by the Defendants capable of supporting an IIED claim. At most, Naumov has alleged that the Defendants participated in the termination of his employment under circumstances which he contends were not warranted. Such acts do not approach the level of extreme and outrageous conduct required to state an IIED claim. *See id.* at 670, 607 A.2d at 11 (citing prior case law as

14

standing for proposition that "the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct"). Therefore, Count Two of the Complaint must be dismissed.

### III.     The Complaint Fails to State a Cause of Action for Wrongful Discharge.

#### A.     As Naumov Has Statutory Remedies Under Title IX, He Cannot Recover Under Maryland Law For A Common Law Wrongful Discharge Claim.

A common law claim for wrongful discharge under Maryland law is not cognizable because Naumov has a statutory remedy under Title IX. In Maryland, the tort of wrongful discharge is a narrow one. For a plaintiff to prevail on such a claim, he must allege and prove that his termination contravenes some clear mandate of public policy. *Adler v. American Standard Corp.*, 291 Md. 31, 43 (1981). Claims of wrongful discharge are limited to those "involving the actual refusal to engage in illegal activity, or the intention to fulfill a statutorily prescribed duty." *Id.* Furthermore, the tort of wrongful discharge was designed specifically to address "particularly reprehensible conduct" and to "provide a remedy for such conduct when no other is available." *Porterfield v. Mascari II, Inc.*, 142 Md. App. 134, 140-141 (2002). As such, a wrongful discharge action will not lie where a state or federal statutory remedy is available. *Makovi v. Sherwin-Williams Co.*, 75 Md. App. 58, 540 A.2d 494 (1988); *Parlato v. Abbott Labs.*, 850 F.2d 203, 206 (4th Cir. 1988).

Here, Plaintiff clearly has alleged that his claim for wrongful discharge is based on McDaniel's alleged violation of Title IX in terminating his employment. In support of his wrongful discharge claim, the Naumov alleges that Casey recommended that Naumov be fired "in spite of many violations of McDaniel College's rules concerning Title IX," that this violation of Title IX is "a clear violation of public policy," and "[t]that this violation of public

policy, Title IX, led to Dr. Naumov's recommendation for termination." (Complaint ¶ 109-111).

The Supreme Court has held that, "a private right of action under Title IX provides a full spectrum of remedies to a successful plaintiff." *See Pandazides v. Virginia Bd. of E*duc., 13 F.3d 823 (4th Cir. 1994) *citing Franklin v. Gwinnett County Pub. S*ch., 503 U.S. 60 (1992). Where a statute provides a special form of remedy, the plaintiff must use that form of remedy rather than any other. *Solely v. Md. Comm'n on Human Relations*, 277 Md. 521, 526 (1976) (*citing Hartman v. Prince George's Co.*, 264 Md. 320, 323 (1972); *Pressman v. State Tax Commission*, 204 Md. 78, 84 (1954); *Tanner v. McKeldin*, 202 Md. 569, 577 (1953)). "[I]t is a settled principle of statutory construction that, absent a legislative indication to the contrary, it will usually be deemed that the Legislature intended the special statutory remedy to be exclusive." *White v. Prince George's County*, 282 Md. 641, 649 (1978). Maryland courts and this Court consistently have held that where statutes provide the exclusive remedy for a cause of action, dismissal of abusive discharge claims brought under the guise of those provisions is appropriate. *MacGill v. Johns Hopkins Univ.*, 33 Fair Empl. Prac. Cas. (BNA) 1254, at *1257 (D. Md. 1983). The purpose of the statutory remedies "would be impeded rather than promoted if a grievant were allowed to bypass, under the guise of an action for abusive discharge, as plaintiff has attempted to do, the very administrative mechanisms created by the [] legislature to administer and resolve such claims." *Id.* at 1258.

To date, the Maryland courts "have not recognized a judicial exception to the terminable at will doctrine for a violation of clear public policy where a statutory exception already exists to redress violations of that public policy." *Chekey v. BTR Realty, Inc.*, 575 F.Supp. 715, 717-18 (D. Md. 1983). "Allowing full tort damages to be claimed in the name of vindicating the

16

statutory public policy goal upsets the balance between right and remedy struck by the Legislature[.]" *Makovi*, 361 Md. at 626. Thus, in cases of discharge prohibited by statute, the statute creates both the right, by way of an exception to the terminable at-will doctrine, and remedies for enforcing that exception. *Id.* A plaintiff cannot circumvent the statutorily prescribed relief by simply alleging constructive discharge.

Other Courts have held that because Title IX specifically provides a remedy for termination in violation of Title IX, it precludes a claim under state law for wrongful discharge in violation of public policy. *See Wilson v. S. Or. Univ.*, 2006 U.S. Dist. LEXIS 101803 (D. Or. Aug. 24, 2006) (holding that Plaintiff was precluded from bringing a state law claim for the tort of wrongful discharge in violation of public policy where Plaintiff's claim was premised on his alleged termination in violation of Title IX because Title IX "was an existing remedy [that] adequately protect[ed] the public interest in question.") This is consistent with Maryland law. *Makovi v. Sherwin-Williams Co.,* 316 Md. 603, 626 (1989).

Given the undisputed existence of a statutory remedy, Naumov's common law wrongful discharge claim based on a violation of Title IX must be dismissed.

### B. The Complaint Fails to State a Cause of Action For Wrongful Discharge Because Defendants Were Not Naumov's "Employer."

Count Three of the Complaint is styled as a claim for wrongful discharge. The fundamental, fatal defect with regard to this claim is that none of the Defendants named in this action is alleged to have been Naumov's employer. To the contrary, Naumov identifies his employer as McDaniel College. (Complaint ¶ 4).

Maryland's Court of Appeals has explained that relief under the wrongful discharge tort is available, if at all, from the discharged plaintiff's former employer. *See Wholey v. Sears,*

17

*Roebuck & Co.*, 370 Md. 38, 49, 803 A.2d 482, 488 (2002) ("When this Court recognized the wrongful discharge tort in *Adler*, 291 Md. at 36-37, 432 A.2d at 467, we joined the growing number of states which have adopted a 'public policy exception' to the common notion of at-will employment by holding, specifically, that an employee who has been 'discharged in a manner that contravenes public policy' may 'maintain a cause of action for abusive or wrongful discharge **against his former employer**.'") (quoting *Adler v. American Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464, 467 (1981)) (emphasis added).

Because none of the Defendants in this action are alleged to have been Naumov's employer, Naumov cannot maintain a cause of action for wrongful discharge.

### C. The Complaint Fails to State a Cause of Action for Violation of Due Process.

The final claim set forth in Naumov's Complaint is styled as one for "Violation of Due Process," and asserts that Naumov was deprived of his right to due process under the Fourteenth Amendment. The Complaint explicitly alleges, however, that the party alleged to have engaged in the violation was McDaniel, not any of the three Defendants named in this action:

> McDaniel College violated Naumov's right to Due Process under the 14th Amendment to the U.S. Constitution.

(Complaint ¶ 113).

Count Four, therefore is subject to dismissal on the grounds that none of the Defendants in this action are alleged to have committed the alleged violation.

Further, Naumov's due process claim fails on the grounds that each of the Defendants in this action is a private citizen. As a result, the Fourteenth Amendment has no application.[4] *See Crump v. Montgomery County Educ. Ass'n*, 2014 U.S. Dist. LEXIS 133146 at *11 (D. Md. Sept. 23, 2014) ("It is well-settled that 'the Fourteenth Amendment, which prohibits states from

---

[4] Defendants note that McDaniel College is also a private entity.

denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities.'" (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)); *Vaeth v. Mayor & Balt. City*, 2011 U.S. Dist. LEXIS 114183 at *16 (D. Md. Oct. 4, 2011) ("'The Fourteenth Amendment does not create rights enforceable against private citizens . . . but only against the States.'") (quoting *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 863 (4th Cir. 1999)).

## CONCLUSION

In light of the foregoing, Defendants respectfully request that the Court dismiss with prejudice all counts of Plaintiff's Complaint.

Respectfully submitted,

_____/s/_____
Gil A. Abramson (Bar No. 01240)
Katherine H. Levy (Bar No. 30027)
JACKSON LEWIS P.C.
2800 Quarry Lake Drive
Suite 200
Baltimore, Maryland  21209
phone (410) 415-2000
facsimile (410) 415-2001
gil.abramson@jacksonlewis.com
katherine.levy@jacksonlewis.com

Attorneys for Defendants,

Chairman of the Board of Trustees,
McDaniel College, Inc.,
Roger Casey, and Jeanine Stewart

4811-4998-1986, v.  4