# Exhibit 4

5·5·2014

Meeting w/ Sara Move.

- Submitted Request for LOA next year
- has told her dept. of her plan
& has accepted pos. @ Johns H.

*Need to draft response*

I asked about the of prob's / challenges w/ Pavel Naumov

She brought up Title IX

*Reach out to tenured Math & CS for new chair AND to dept sec'y*

- shared the of unappropriate behav. in the dept.

e.g. while wearing sweaters w/ design
He would stare @ her chest &
say "I'll be thinking of circles all day."

He would comment daily on her appearance

& try to walk her to her car at the end of ea. day.

She had to repeatedly request that he not comment on her appearance & not accompany her to her car.

She & PN used to collaborate on research until it "drove her crazy" and she ended that.

She was listed as a "reference" when he was tenured and was not contacted by the FAC. PN & SM were tenured Same year.

(He was denied ten 2 yrs earlier & appealed to Pres. J.C. who gave 2 more years pre-ten & allowed him to come fwd.

D00001

Several years ago SM had considered taking
another job. When PN found out he
"promised to change." offered to "make her happy
here"

She stayed at McD for other reasons, but has seen
less of PN day-to-day — She had a parental leave,
a sabbatical, then he was d.chair, then she
was dept chair (this year)

&He has adopted strategy of
focusing on work w/ senior-most, strongest
students.

He won't talk to sm. except in class or
dur. office hours.

He has taken students to conferences and
off-campus dur. Jan term w/no negative
fall-out that she is aware of.

She claims he has not touched inappropriately - only
defied social boundaries & been "intense" in his
interactions (e.g. "If I weren't married I would
marry you.")

He sent a hard-copy letter to her (about 3 pp. typed)
about 18 mos. ago saying he would "try to be good."
When she told him that she is leaving next year
he said "because of me? I've been good, haven't I?"
I told SM that I feel obligated to file a T9 claim on
behalf of McD, that I would ask an advisor to
speak w/her (Julia Jasken) and that an
investigation (using trained DoCS officers) would

Follow.

    She is comfortable w/ this (assuming confidentiality
and hoping to be gone before conclusion)

    She will share documentation from her file
w/ DOGS investigators.

I will re-read policy
    & move case fwd.


Others w/ info —

    Tom Falkner (met w/ SM ~ 2 yrs ago)
    Tom Stebach (HR Dir, now retired)
    Phys. Sec'y (left dept then returned p PN not chair)
    T. Simionelli
    S. Hamblen
    o⁺ Cand. fr math search Spring '13
        ~ emailed corresp. from
        PN to cand. may have
        caused her to decline offer.
        She copied all in dept. on
        final reply.

Monday, October 26, 2015 at 11:13:10 AM Eastern Daylight Time

**Subject:** FW: time tomorrow morning?
**Date:** Thursday, May 29, 2014 at 12:09:50 PM Eastern Daylight Time
**From:** jstewart
**To:** elmmler
**BCC:** jstewart, upraetor@gmail.com

Eric,

I just recalled one more important detail of yesterday's conversation that I inadvertently left out of my summary. Sara mentioned that she has recently been receiving unwelcome communications from the respondent where he has been asking her to join him for lunch prior to her leaving McDaniel. She mentioned that this troubled her because it was not a suggestion to meet for a meal with the entire department (which would be appropriate) but a request to meet with him only. In fact, she mentioned that the last communication she received from him was a suggestion that he come to Baltimore to meet her for lunch if that is more convenient for her than meeting here in Westminster. She lives in the Towson area.

I am not sure whether these communications are coming to her email account, or whether they have been in person. Again, as noted below in my earlier email to you, I find it interesting and troubling that Sara has not framed these events as continuation of the objectionable activity that had been part of the pattern of unwelcome conduct that she has endured over the years.

Because Sara told me yesterday that her husband and friends have been discouraging her from participating in any claim regarding this situation here at McDaniel (they are encouraging her to walk away and move on, leaving it in our hands to figure out what to do with the respondent), I am concerned that she may not have been fully forthcoming about all of the recent communication she has had with the respondent that fits this pattern. When I asked whether she had been subject to any troubling conduct this year she told me she had not, although the letter mentioned below was dated in September, 2013; and the invitations to lunch occurred in recent weeks.

Several areas seem ripe for follow-up, including a review of Sara's email records to review those that have come from one of the respondent's addresses (mcdaniel.edu or his personal account); interviewing other members of the department to explore the possibility that there have been eyewitnesses to the objectionable behavior she has experienced; and interviews with the FAC and ADA representatives to the search that was conducted last year to explore the possibility that there has been a pattern of similar objectionable or intrusive behavior with others.

Again, let me know if you have any questions for me.

Best,

Jeanine Stewart, PhD
Provost and Dean of the Faculty
McDaniel College

Page 1 of 5

D00004

2 College Hill
Westminster, MD 21157

410-857-2248

On 5/29/14, 8:53 AM, "jstewart" <jstewart@mcdaniel.edu> wrote:

Eric,

I am writing to follow up on a meeting I held yesterday with Sara More.
The email exchange we had when setting up that meeting appears below.

Sara brought with her four documents that she allowed me to read, but did
not want to photocopy or leave in my possession. This is consistent with
her ongoing request to be treated as an anonymous witness rather than a
complainant.

The four pieces that I reviewed included:
-a 3 page, typed letter that was addressed to Sara from the respondent and
was given to her in hard copy. She had referenced this document in my
earlier conversation with her. The letter was dated September 9, 2013.
- a series of emails sent to her by the respondent in the summer of 2012,
as she was considering leaving McDaniel for another position. The emails
were all brief and were sent to her over the span of about 4 days. There
was reference to his being in Japan at the time they were written (at a
conference, perhaps).
- 2 greeting cards given to her by him.

She later dropped off two items
- a copy of an email exchange with a female candidate for the mathematics
position filled in the spring of 2013.
- the itineraries for all 5 candidates who visited campus for that
position (3 women, 2 men) which was eventually filled late last spring.

Based on my recollection, the typed letter opened with an apology for his
having made a mistake. I asked her what the mistake might have been, and
she said she was not sure, but believed it may have been associated with a
conversation they had while sitting next to each other at commencement
last spring (2013). She recalled that he had been going on about something
and she stopped the conversation saying, "We are just different,"
apparently intending to indicate that she was not going to encourage the
line of discussion he had started. The letter went on to refer to his
having once believed that they had very much in common, including values,
principles, interests. He then enumerated in the letter several
observations about their personal styles, starting with his having grown
up in the Soviet Union where privacy and personal space were non-existent,
and his having realized that privacy is a need she has. The letter went on
to evaluate her needs, her style and her personality as contrasted with

D00005

his. My impression of the letter's tone was that it was overly personal and presumptuous. It smacked of adolescent intensity as the respondent sought to construct a rationale for her lack of personal connection with him. I found the recency of this letter surprising, given that Sara had told me in our earlier conversations that she had not been subject recently to particularly problematic behavior at the hand of the respondent. I have the impression that she has been ignoring and rationalizing her reaction to the behavior over a lengthy period of time.

The email series was similar in tone, although each message was brief. The copy I reviewed did not have any responses from Sara, yet he continued to email again and again and she noted in our conversation yesterday that these had all been sent in the span of about 4 days.

The greeting cards were not associated with any precipitating event such as a birthday or an achievement or a loss. They were not dated, although Sara mentioned the timing of her receipt of the cards having coincided with other events such as (I believe) her having chosen to remain at McDaniel after turning down the job offer two years ago. Each contained only a short, hand-written message, and these again reflected the same kind of intensity and lack of attention to professional boundaries that the other communications demonstrated. I have asked Sara if she would be willing to provide me with a photocopy of each card, since I don't believe her name appeared on those.

The email exchange with the job candidate also extended beyond professional boundaries, in my opinion. The tone is consistent, in my view with the tone of the messages Sara shared with me. It is highly unusual for any faculty member to communicate extensively and directly with a job candidate who is working with the dean or provost on an offer to come to the college. IN the first email that the respondent sent to the candidate, he informs her of his enthusiasm for her candidacy and goes on in the same message to describe the arrangements that will be made regarding her acquisition of a computer and allocation of course assignments, offering to stay in communication with her as she is working with the dean. He sent another email a few days later, prompting a brief but polite response from the candidate. He had been writing from a personal email account as well, while technically interfering with official college business (and acknowledging in the message that he understood this work to be in the interim dean's domain). As you know, the candidate ultimately declined the offer, as did two additional female candidates.

Sara had explained to me that two of the three female candidates who received offers in this search had met with the same member of the FAC (promotion and tenure committee), and that committee member (Lauren Dundes) had mentioned to Sara (when both served on the committee this year) that the two women had mentioned in their interview conversations that the respondent had seemed rather odd to them. Sara also told me that the respondent, who was department chair at the time, had scheduled at least some of the candidates to meet with him alone for dinner (a practice I would consider highly unusual during a search) and he had also arranged to transport each candidate to and from the airport by himself. While this practice is not as unusual, the transportation duties are often shared among members of the search committee across the period of the search.

D00006

Sara brought me the itineraries for the five candidates so that I could
have a record of the FAC members who met with each, the ADA coordinator
assigned to meet with each, and the dinners and transportation
arrangements as well as individual and group meetings scheduled for each
candidate.

The other comments that Sara made yesterday that raised a red flag for me:
- the respondent's problematic conduct was worse earlier in her time at
McDaniel than it has been recently.
- she said that the respondent seems so normal to members of the college
community, but members of her department know otherwise, and all have been
extremely frustrated with him and his conduct over many years.
- she said that she is ²afraid² of what the respondent might do to her if
he were to find out that she had contributed to a claim against him, and
said that she ²has seen how he can be² when he is challenged or made to
feel under scrutiny. This led me to name the fear as a fear of
retaliation, and I described our obligations as an institution with regard
to prevention of retaliatory behavior associated with complaints under our
Title IX policy. Sara said she understood that she was describing a fear
of retaliation and that the institution would do everything in our power
to protect her, yet she feels that keeping her name out of our files is in
her best interest. I advised that the materials in her possession would be
likely to help us advise future law enforcement or campus safety personnel
about the nature of the risk if there were a future issue with this
respondent that could in some way impact her. She still declined to
provide me with the materials for my files.

Our meeting lasted a total of about 45 minutes yesterday.

Please let me know if you need additional information from me.

Best,
Jeanine


Jeanine Stewart, PhD
Provost and Dean of Faculty
McDaniel College
2 College Hill
Westminster, MD 21157




On 5/27/14, 10:47 PM, "smore" <smore@mcdaniel.edu> wrote:

Ok, great.

--
Sara Miner More, Ph.D.
Associate Professor, Computer Science

McDaniel College
Westminster, Maryland
Email: smore@mcdaniel.edu

On May 27, 2014, at 9:03 PM, "jstewart" <jstewart@mcdaniel.edu> wrote:

Sara,
10 is great. See you then.
Thanks!
Dr. Jeanine S. Stewart
Provost, Dean of Faculty
McDaniel College
Sent from my iPad
On May 27, 2014, at 5:43 PM, "smore" <smore@mcdaniel.edu> wrote:
Hi Jeanine,
I can come tomorrow. Would 10am or later work?  Or I can probably make
9:30 if that is better for you.
Sara
--
Sara Miner More, Ph.D.
Associate Professor, Computer Science, and
Chair, Mathematics and Computer Science
McDaniel College
Westminster, Maryland
smore@mcdaniel.edu
On May 27, 2014, at 3:37 PM, "jstewart" <jstewart@mcdaniel.edu>
wrote:
Sara,
Would you be able to come to campus tomorrow morning? I would
appreciate a chance to talk through some issues with you, and would
value the opportunity to sit with you while you refer to some of the
documents you have in your possession. If you could bring the file
along, it would stay in your possession, but I would like to ask some
specific questions that will tell me a bit more about how I need to
handle some aspects of my work in the future.
If this could work for you, please let me know.
It was great to meet your husband and kids last weekend. It was a fun
party  I am already eager for next year's Old Main bash!
Take care,
J
Jeanine Stewart, PhD
Provost and Dean of the Faculty
McDaniel College
2 College Hill
Westminster, MD 21157
410-857-2248

D00008