```
 1              IN THE UNITED STATES
           DISTRICT COURT FOR MARYLAND
 2              SOUTHERN DIVISION

 3   DR. PAVEL NAUMOV,            :

 4      Plaintiff                 :   Case No.:
                                      8:15-cv-00482GJH
 5   vs.                          :

 6   MCDANIEL COLLEGE, INC.,      :
     et al.,
 7      Defendants.               :   December 22, 2015

 8

 9                    - - - - - - - - - - - - - - - - - -

10           The deposition of JENNIFER GLENNON, taken

11   on Tuesday, December 22, 2015, commencing at 1:24

12   p.m., at 5401 Twin Knolls Road, Suite 7, Columbia,

13   Maryland 21045, before Shannon M. Wright, a Notary

14   Public.

15

16                    - - - - - - - - - - - - - - - - - -

17       -

18

19

20   Reported by:
     Shannon M. Wright
21
```

Handwritten annotations (right margin):
Complainant is person who experienced the violation
Yes p. 11
90 days to be valid complaint
She admits that she was never [illegible] p 19
[illegible] p 2[?]

Page 18

1 formal complaint is made?
2   A  No.
3   Q  Why do you say that?
4   A  At that time, there was enough
5 information that indicated that a formal
6 grievance could be -- could occur. And so I
7 believe that Dr. Stewart was giving him the
8 option to resign before that formal hearing went
9 forward.
10  Q  Mm-hmm. But resignation would end his
11 affiliation with McDaniel College?
12  A  Yes.
13  Q  And give up his tenure?
14  A  Yes.
15  Q  And -- and you don't see anything wrong
16 with that as being the outcome of the informal
17 process?
18  A  No.
19  Q  Isn't there a 90-day window for
20 reporting Title IX violations?
21  A  Where are you reading from?

Page 19

1   Q  The same page 10, first paragraph.
2      Any complaint must be reported to the
3 advisor.
4   A  Okay.
5   Q  Doesn't that mean that the violation
6 would have -- must occur 90 days before in order
7 for a complaint to be a valid complaint?
8   A  That's what it says.
9   Q  Okay. But in this case, that was not
10 the case, was it?
11  A  To my knowledge, a report was made to
12 an advisor.
13  Q  Within 90 days?
14  A  Dr. Jasken. Mm-hmm. In the spring.
15  Q  Which -- which behavior -- you listed a
16 number of behaviors in your letter to
17 Dr. Naumov.
18  A  Can I see the letter?
19  Q  Oh, yeah.
20     (Whereupon, Glennon Deposition Exhibits
21 Nos. 1 and 2, marked.)

Page 20

1      MR. STROUSE: Let's -- I don't seem to
2 have it.
3      MS. RILEY: You talking about
4 Dr. Stewart's letter?
5      MR. STROUSE: No. The complainant. I
6 believe that was before.
7      PAVEL NAUMOV: Summary of complaint.
8      MR. STROUSE: Yeah, the summary of the
9 complaint. I have it in the other room. Let me
10 get it. No, that's not it. Let me make a copy
11 of this.
12     (Whereupon, a recess was taken.)
13  Q  Let me move on.
14     Yeah. When did you start as Title IX
15 coordinator?
16  A  I believe I already answered July --
17  Q  July?
18  A  -- 2015 is when I was appointed.
19  Q  July what?
20  A  I don't remember the exact day.
21  Q  Oh, okay. Okay. Moving on to the

Page 21

1 grievance committee.
2      What was your role in setting up the
3 grievance committee?
4   A  I appointed the members.
5   Q  All the members?
6   A  Mm-hmm.
7   Q  Okay. And how did you go about
8 selecting those members?
9   A  I used the guidance in the policy.
10  Q  Uh-huh. And why was Ms. Hines put as
11 chair?
12  A  So we are to use members of the
13 president's council. And Mr. Phizacklea and
14 Ms. Gerl are already involved at the appeal
15 level. Dr. Stewart was already involved. And
16 Ms. Hines had the most tenure of those that were
17 left.
18  Q  Okay. And what about the faculty, why
19 did you choose the faculty that were --
20  A  I chose from individuals that were
21 visitors -- visitors to the board.