# IN THE UNITED STATES DISTRICT COURT FOR MARYLAND
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DR. PAVEL NAUMOV** | * | |
| 5301 Musket Court | | |
| Rockville, MD  20853 | * | |
| | | |
|     **Plaintiff** | * | |
| | | |
| v. | * | |
| | | |
| **McDANIEL COLLEGE, INC.** | * | |
|     and | | Case No.:  8:15-cv-00482GJH |
| **Martin Hill, Chairman of the** | * | JURY DEMAND |
| **Board of Trustees** | | |
|     and | * | |
| **President Roger Casey** | | |
|     and | * | |
| **Provost Jeanine Stewart** | | |
| 2 College Hill | * | |
| Westminster, Maryland 21157 | | |
| | * | |
|     **Defendants** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE

    Plaintiff, Pavel Naumov, by his undersigned counsel, hereby files this Memorandum in Opposition to Defendants' Motions in Limine.

    Plaintiff respectfully requests this Honorable Court to order that:  (1) Plaintiff be allowed to offer non-expert and expert opinion testimony to the value of lost tenure and lost future earnings; (2)  Plaintiff be allowed to offer evidence for damage to his professional reputation and for professional standing;  (3) Plaintiff be allowed to call his expert to testify on the value of tenure;  (4)  Plaintiff

be allowed to offer evidence of loss of tuition benefits for his dependent children; (5) Plaintiff be allowed to introduce evidence that Jennifer Glennon said that only the person subjected to the alleged behavior can make a formal complaint; (6) Plaintiff can seek back and future wages after December 2015.

**ARGUMENT**

The trial concerns only Plaintiff's claim for Breach of Contract. All of the damages that result from the breach of contract should be allowed. Defendant's Motions in Limine seeks to emasculate any presentation of Plaintiff's damages in addition to presenting evidence of McDaniel College's wrong doing.

### I.     CONTRACT

A contract is defined as "a promise or set of promises for breach of which a law gives a remedy, or the performance of which the law, in some way, recognizes as a duty". _Lacy v. Arvin_, 140 Md. App. 412, 488, 780 A.2d 1180 (2001). Generally, in Breach of Contract actions, damages awarded to the non-breaching party are designed to put that party in the same position that he or she would have been had the contract not been performed. _MARYLAND CIVIL PATTERN JURY INSTRUCTION_, No. 10:21 (MICPEL 4th ed. 2002 and Supp., 2003). (Hereinafter "MPJI-CV-". These include all damages foreseeable as a result of the breach. MPJI CV 10:22. Other damages, including expenses incurred as a result of the breach of contract and lost profits, also may be recoverable. MPJI-CV-10:21.

Thus, Dr. Naumov may ask for damages to his (1) loss of tenure; (2) his expenses related to having to obtain a new position such as housing and upkeep; (3) loss of faculty research semester every seven years (sabbatical); (4) loss of reputation; (5) all travel expenses related to travel back to home in Montgomery County, Maryland; (6) loss of educational benefits of children, Victoria and

2

Veronica; (7) loss of professional reputation and professional standing; and (8) interest and costs.

    A. <u>In addition, Plaintiff should be allowed to offer evidence regarding related breaches of contract, including:</u>

- Plaintiff's allegation that the investigator never interviewed him;
- Plaintiff's allegation that he was banned from campus, the lock to his office changed, or that he was shut out of campus emails;
- Plaintiff's allegation that he had a right to confront witnesses and remain in the hearing room during the Grievance Committee hearing;
- Plaintiff's allegation that only hearsay evidence was presented against him;
- Plaintiff's allegation of Dr. Stewart's violation of the AAUP when she asked him to resign, without consulting the Faculty Affairs Committee.
- Plaintiff's allegation that an employee can be suspended only where he poses a threat or has been previously charged;
- Plaintiff's allegation that he should have been entitled to testify before the Appeals Committee and before Dr. Casey;
- Plaintiff's allegation that he should have been entitled to testify before the Faculty Affairs Committee.
- Plaintiff's complaint that all hearings with the complainant, respondent, and witnesses were required to be recorded;
- Plaintiff's complaint that the Grievance Committee was to have recommended sanctions;

- Plaintiff's complaint that the Grievance Committee should have only considered the narrative portion of the Grievance complaint as an allegation of stalking (and not in support of the claims of harassment or hostile work environment), and should have dismissed the entire complaint once it found him not responsible for stalking;
- Plaintiff's complaint that after Dr. Stewart recused herself from the Appeals Panel, no one was appointed to replace her;
- Plaintiff's complaint that the Appeal Panel had no faculty representation;
- Plaintiff's complaint that a member of the Appeal Panel (the Chief Financial Officer) was present when Dr. Stewart provided him with the opportunity to resign;
- Plaintiff's complaint the investigation report was not given to him; and that the information in the report was not given to him until the day of the Grievance Committee hearing;
- Plaintiff's complaint that he was provided with only a summary of the Grievance Committee findings;
- Plaintiff's allegation that the complaints against him were filed after the 90 day deadline stipulated in the Title IX policy;
- Plaintiff's complaint that there was no informal process;
- Plaintiff's complaint that he was not given the opportunity to be accompanied by an advisor of his own choosing who may act as counsel; and
- Plaintiff's complaint that the Grievance Committee decision was not personally hand-delivered to him.

All of the above are violations of McDaniels' Faculty Handbook or Title IX policy and should be presented to the jury.  These are facts that happened and have probative value.  There is no danger of unfair prejudice, confusion of the issues, or misleading the jury as these statements are all related to the contract breach..  Fed.R. Evid. 403.  These above claims are unchallenged facts that have been substantiated to the Court.  All are directly related to the Breach of Contract.

II. **PLAINTIFF SHOULD BE ALLOWED TO OFFER NON-EXPERT TESTMONY TO THE VALUE OF LOST TENURE OR LOST FUTURE EARNINGS**

First, back in June 2017, Plaintiff did designate an expert to testify on the economic damages due to loss of tenure and loss of future earnings.  That expert is Chad Staller, a forensic economist who has a long history of testifying in jury trials.  While this was technically past discovery deadlines, discovery was to be supplemented and Mr. Staller was named by the Plaintiff several months before trial.  He should be allowed to testify.  In discovery materials, Plaintiff was to name an expert later and has done so.

Plaintiff does intend to offer testimony personally or through other lay witnesses as to the monetary value of lost future earnings and loss of tenure throughout his professional career.  Loss of future earnings is easily calculated as the difference between earnings at McDaniel and earnings at positions in other colleges.  Of course, to date, all that Dr. Naumov has been able to obtain is visiting Associate Professorships at other colleges, the last of which is at Vassar College.

The damages related to tenure or a lifetime position at a college

or university can be calculated by other faculty members as well. Faculty members all work hard to obtain tenure through research publications, community and institutional service. The value of a sabbatical can be easily calculated as a semester off (for research) every seven years. Thus, every seven years, a faculty member with tenure gets one-half his salary to travel and/or do basic research in his or her field. The value of tenure is a lifetime position at one college or university that can only be terminated for just cause.

According to the Fed. R. Evid. 701 which governs opinions of lay witnesses:

"If the witness if not testifying as an expert, the witness testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702".

There is no question that any tenured faculty could opine on the worth of tenure to him or herself and could determine with some specificity of the damage to Dr. Naumov on the loss of tenure. This testimony would be helpful to the determination of a fact at issue and not based on scientific, technical, or specialized knowledge. The Court has found that lay opinions as to technical matters may sometimes be appropriate. *Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190 2000-01 (3rd Cir. 1995). "We have cautioned that a lay opinion witness will have a reasonable basis grounded either

6

in experience or specialized knowledge for arriving at the opinion that he or she expresses…

As *Donlin v. Philips Lighting North America Corp*, 581 F.3d 73 (3rd Cir, 2009) states, "This does not mean that an expert is always necessary whenever the testimony is of a specialized or technical nature.  When a lay witness has particularized knowledge by virtue of her experience, she may testify – even if the subject matter is specialized or technical – because the testimony is based on the layperson's person knowledge within the scope of Rule 702". This is exactly the case with Dr. Naumov's faculty witnesses, who have achieved tenure for many years.

Thus, both Dr. Naumov and his faculty witnesses should be allowed to testify as to damages caused by his loss of tenure at McDaniel College.

### III. EMOTIONAL DISTRESS AND LOSS OF CONSORTIUM

Will not be pursued as to damages.

### IV. DR. NAUMOV SHOULD BE ALLOWED TO OFFER EVIDENCE REGARDING ALLEGED DAMAGE TO HIS PROFESSIONAL REPUTATION AND/OR PROFESSIONAL STANDING.

This is a true consequential damage claim.  Dr. Naumov's termination from McDaniel College has had a direct effect on his ability to obtain a tenure track or tenured position at other colleges.  To date, he has been able to gain employment only as a visiting professor.  Had he not been terminated, he would have multiple jobs available to him as a tenured Associate Professor of Computer Science and Mathematics.  As in the case of *Redgrave v. Boston Symphony Orchestra* 855 F.2d 888 (1st Cir. 1988), Naumov can point

to particular job opportunities that were lost to him as a result of his termination from McDaniel College.  As a result of Dr. Naumov's termination, these opportunities for tenured positions at other colleges and universities are lost to Dr. Naumov.  His reputation has been severely stained as he had to explain to other job opportunities why he was terminated from McDaniel College.

V. **DR. NAUMOV SHOULD BE ALLOWED TO OFFER EVIDENCE REGARDING THE LOSS OF TUITION BENEFITS FOR HIS DEPENDENT CHILDREN.**

Dr. Naumov plans to introduce evidence and argue that he is entitled to monetary damages for alleged loss of tuition benefits for his children.  McDaniel has for many years offered free tuition to children of faculty who matriculate there.  This benefit is not speculative and easily calculated.  It is four (4) years at McDaniel's tuition of $51,380 (tuition fees, room and board).  Both daughters could commute to McDaniel for the 4 years.  This amount is tax free so the actual cost savings is $77,070.  Over the eight years of attendance, the college costs increase at an average of 3.9%, resulting in an expense of $104,617 by 2025 with tax avoidance figured in. These are not speculative numbers, but exact numbers that can be proven with reasonable certainty.  See *Roebuck v. Steuart*, 76 Md. App. 298, 314 544 A.2d 808 (1998).

This evidence is probable not just possible since both of Dr. Naumov's daughters are headed for college and the oldest has been actively reviewing colleges and universities since she is in the 11th grade. Probable exists when there is more evidence is favor of a proposition than against it; mere "possibility" exist when evidence is

8

anything else.  *Davidson v. Miller*, 276 Md. 54,62, 344 A.2d 422 (1975).  Dr. Naumov is entitled to these damages because the tuition benefit is known and can be calculated.  The children will definitely go to college and take advantage of any college benefit offered.

VI. **DR. NAUMOV SHOULD BE ALLOWED TO OFFER THE MCDANIEL DECEMBER 2014 TITLE IX POLICY IN EVIDENCE AND THAT JENNIFER GLENNON TESTIFIED THAT MCDANIEL TITLE IX POLICY PROVIDES THAT ONLY THE PERSON SUBJECT TO THE BEHAVIOR CAN MAKE A COMPLAINT**

      The College's June 2014 Title IX Policy indicates clearly that the complainant is the person subject to the actual behavior.  It does not allow another person to stand in place of the real complainant.  Many of the statements in the June 2014 Title IX policy make that statement, but the formal complainant is never formally defined.  The December Title IX booklet simply makes it clear that the complainant is only the person against whom the behavior is made.  There is clearly no situation when another member of the college community may step in for the complainant.  This is clear in the June document and it is stated formally in the December document.  "Any complaint must be reported to an advisor within 90 days of the occurrence".  At 10.  "The complainant may approach the advisor without fear of censure or reprisal".  At 10.  "In the event the complainant is unwilling to be identified, a formal hearing will be dismissed, no action will be taken, and no report of any action will be filed".  At 11  Thus, the complainant under both June and December is the person who receives the wrongful behavior.

<u>9</u>

## VII. DR. NAUMOV SHOULD BE ALLOWED TO SEEK BACKPAY OR FRONTPAY DAMAGES AFTER NOVEMBER 2015

After McDaniel terminated Dr. Naumov, Dr. Naumov was entitled to backpay and frontpay since he was terminated as of January 15, 2015. Defendant admits that he is due pay from January 2015 until August 215, or half his salary from the 2014/2015 academic year.

While Dr. Naumov has secured other employment outside of Maryland, he has had to accept temporary visiting appointments. All his expenses from maintaining dual households are definitely damages as well as any travel between homes. Moving expenses, furniture, household help are all damages from the termination.

If McDaniel's salary and benefits are higher than the schools at which Dr. Naumov is teaching, then Dr. Naumov should be given front pay as well. If Dr. Naumov fails to obtain other employment, then McDaniel will be liable for that pay for the period Dr. Naumov is unemployed.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully prays this Honorable Court deny the Motions in Limine concerning (1) non-expert and expert opinion testimony relating to the value of lost tenure or lost future earnings; (2) evidence of damage to his professional reputation and professional standing; (3) evidence of loss of tuition benefits for Plaintiff's dependent children; (4) the McDaniel December 2014 Title IX policy or evidence that Jennifer Glennon testified that McDaniel's policy provides only the person subject to the alleged behavior can make a formal complaint,

and;(5) testimony regarding claims for back pay and front pay after December 2015.

Plaintiff shall be allowed to question witnesses on any of the above issues.