## **STATEMENT OF THE CASE**

## **OVERVIEW**

This is a case about a professor who refused to complain in a Title IX action against a colleague. She was given ample encouragement to become the complainant but she refused. She did make allegations about her colleague, Dr. Naumov in conversations with Dr. Jeanine Stewart, the provost of McDaniel College but Dr. More refused to be the formal complainant. Dr. Naumov has never had a complaint against him previously.

Who are Dr. Pavel Naumov, Dr. Sara More, and Dr. Jeanine Stewart? Dr. Naumov was a tenured Associate Professor of Computer Science at McDaniel College starting in 2005 and he was one of two in the Computer Science Department. He has a Ph.D from Cornell and an extensive publication record, especially for a teaching college like McDaniel. He produced 12 publications with Dr. More. He now teaches at Vassar College in upstate New York, is married and has 2 children. Vassar is primarily a women's college.

Dr. Sara More was a tenured Associate Professor of Computer Science at McDaniel starting in 2006. In 2013 she was Chariperson of the Dept. of Mathematics and Computer Science with Dr. Naumov's support. She refused to be a complainant in this case and is now Associate Professor of Computer Science at Johns Hopkins University. Dr. More is married and has 3 children.

Dr. Jeanine Stewart was Provost at McDaniel, the 2nd highest officer at McDaniel and had recently come to McDaniel to be Provost. When she heard that Dr. More was leaving McDaniel for Johns Hopkins, she had several meetings with Dr. More. Dr. More made some complaints about Dr. Naumov during these conversations but refused to formally complain about him to the college. The evidence will show that Dr. Stewart took it upon herself to illegally become the Complainant accusing Dr. Naumov. Nowhere in McDaniel's Title IX booklet does it allow someone to stand in for the complainant.

Dr. Stewart also gave Dr. Naumov his informal hearing, offering him to resign or be charged as violating Title IX. She filed a formal complaint against Dr. Naumov based entirely on hearsay.

Dr. Steewart was terminated by President Casey a few months later and she now has her own consulting company. She is divorced and has two children.

Dr. More and Dr. Naumov worked closely together in planning which courses to offer McDaniel students as well as producing 12 published papers during their eight years together. They worked at McDaniel and through emails to

1

produce the papers.  Dr. Naumov enjoyed working with Dr. More, and considered their relationship to be a positive, and friendly one.  They visited each other's' homes, exchanged gifts, knew each other's' spouses, and generally had a friendly working and social relationship.  They told each other personal information about their families.  Dr. Naumov liked Dr. More and wanted to keep their working relationship alive and well.  He wrote emails to her telling her not to leave McDaniel when he heard that she was contemplating going to another college.  When he found out that she had a non-tenure offer from Johns Hopkins, he asked her to reconsider and stay.  He offered to take her to lunch with others to say goodbye.  He told her that he would do everything in his power to make her feel comfortable at McDaniel.

However, Dr. More decided to accept the position at Johns Hopkins and leave McDaniel even though it was a position without tenure.  She did so in part because Johns Hopkins was much closer to her home, she had to arrange child care for her children, Johns Hopkins had a much smaller teaching load (2 courses per semester), and is a much more prestigious institution when compared to McDaniel, and the salary was higher.  Johns Hopkins is often ranked, the evidence will show, as one of the top ten best Universities in the country, while McDaniel has no such comparable ranking.  There is little question that an appointment to Johns Hopkins is a step up from McDaniel for any relatively young professor.

Yet Dr. More made some complaints about Dr. Naumov.  The complaints by themselves were nebulous and insignificant.  For example, Dr. More complained that Dr. Naumov took her to her car.  This happened one or two times and after she said something to Dr. Naumov, he changed his teaching schedule so that they would leave the school at different times than she. He once made a comment on her sweater; that it had circle patterns on it.  If this occurred, Dr. Naumov denies saying it, although he does remember saying something about a formal outfit she wore and asked her where she was going after class.

She complained about "longer than needed emails over the weekend."  Yet she and he worked closely together on 12 published papers over the years they worked together.  Dr. Naumov came to McDaniel in 2005 and Dr. More in 2006 and they started a professional collaboration almost immediately, writing and publishing twelve (12) papers over a eight year period.  This is an excellent record.  She complained about Dr. Naumov standing in her doorway for an extended period of time. Their offices were close together with easy access to each other's office.  This, the evidence will show, was a normal way of interacting with each other when discussing college business or research problems.  Another complaint was that Dr. Naumov would sit in the common area outside both of their office on a

<u>2</u>

sofa and work on his computer facing Dr.More's office.  The evidence will show that Dr. Naumov did some of this but usually when talking with students.  The evidence will show that Dr. Naumov encouraged student research and published and gave papers with students, both female and male students.  Of the 60 papers Dr. Naumov has published, 41 of them are with female professors or students, without any complaints from any of them.

     Dr. Naumov also wrote a personal 3 page letter to Dr. More telling her he would do everything possible to make her happy at McDaniel.  He gave her two cards for various events and watched her at work.  All these instances were minor and innocent and happened infrequently over a 8 year period.  Even taken together, they do not amount to any kind of hostile work environment, or harassment.  Nowhere is Dr. Naumov accused of any sexual relationship or sexual misdeed.  At its core, the evidence will show that Title IX REQUIRES some gender or sexual misdeed.  This was never charged by McDaniel or Dr. Stewart and makes the allegations against Dr. Naumov erroneous on its face as a Title IX charge.  The evidence will show that Dr. Naumov should never have been charged under Title IX and that Dr. Stewart's stepping in for Dr. More was wrong and against Title IX policy.  In addition, Dr. Naumov was fired by Dr. Casey and the Board of Trustees for "moral turpitude" and "violations of the rights of fellow faculty members."  Neither of these charges was even made by Dr. More or Dr. Stewart. They were never made against Dr. Naumov and were erroneous.

     Finally, we have to consider **damages**.  He has back wages of $46535 that he wasn't paid for while he was seeking a new position.  He has lost his tenure Associate Professor position.  Besides his loss of tenure, he lost all his rights to Sabbaticals at McDaniel to which he would be entitled every seven years.  Based on an average salary of $125,000 over his 37 year career with 25% for benefits (or 31,000), he would be entitled to 5 sabbaticals during his career at the cost of 50% of his yearly salary with benefits or $156,000; that would be 5 times $78,000 or $390,000.  He also lost his opportunity to become a full professor which possibly would be worth approximately $15,000 per year for 30 years (it would take him several years to become a full professor). This would be a total of $360,000.

Because Dr. Naumov's current position is now in upstate New York, he has to maintain two households.  The total for this includes a second home and moving expenses.  If it takes him fifteen years to obtain a suitable tenured position at another college or university, then the cost for housing would be $12,000 per year for rent and utilities or $360,000 for 15 years, and moving expenses not reimbursed by the college of $5,000 per year for 15 years.  Finally there are legal and court